UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TORIE WILLIFORD, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> COVENANT CARE VEGAS, INC. dba ) <br> SILVER HILLS HEALTH CARE CENTER, a ) <br> Foreign Corporation; DOES 1 Through 25, ) <br> inclusive; and ROE CORPORATIONS 1 ) <br> Through 25, inclusive, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:21-cv-2203-GMN-NJK <br><br> **ORDER** |

Pending before the Court is the Motion to Compel Arbitration, (ECF No. 5),[1] and Motion to Stay Pending Arbitration, (ECF No. 6), both filed by Defendants Covenant Care Vegas, Inc. *et al.* (collectively, "Defendants") as a single motion. Plaintiff Torie Williford ("Plaintiff") filed a Response, (ECF No. 11), and Defendants filed a Reply, (ECF No. 15).

For the reasons discussed below, Defendants' Motion to Compel Arbitration and Motion to Stay Pending Arbitration are **GRANTED**.

**I.     BACKGROUND**

This case arises from an employment dispute. On January 7, 2020, Defendant Covenant Care Vegas, Inc. ("Defendant Covenant Care") hired Plaintiff to work as a Certified Nursing Assistant. (Decl. Terri Robinson ("Robinson Decl.") ¶ 2, Ex. 1 to Mot. Compel Arb., ECF No. 5-1). As part of the paperwork presented in her on-boarding process, Plaintiff signed a "Mutual Arbitration Agreement" on January 7, 2020. (*See* Mutual Arb. Agreement, Ex. 1 to Mot.

---

[1] The Court ordered Defendant to refile its Motion to Compel because the original filing did not include Defendants' counsel's signature. (*See* Min. Order, ECF No. 8). Defendant then refiled the Motion to Compel. (Notice Corrected Image, ECF No. 9).

Compel Arb., ECF No. 5-1). Relevant to the Court's discussion below, the Agreement provides in part that:

> In exchange and in consideration of your continuing employment, you and Covenant Care agree to resolve any and all claims arising out of or relating to your employment application or candidacy for employment, or if hired, any claim related to your employment or employment termination, to final and binding arbitration before a neutral arbitrator.

(*Id.*, Ex. 1 to Mot. Compel Arb.). Additionally, the Mutual Arbitration Agreement defines the scope of the agreement as incorporating the following:

> Such disputes include without limitation disputes about hiring, compensation, termination, discrimination, harassment, retaliation, including but not limited to claims arising under the Civil Rights Act of 1964 (Title VII), the Civil Rights Acts of 1866 and 1991, the Older Workers Benefit Protection Act, the Rehabilitation Act, the Equal Pay Act, Section 1981 of the Civil Rights Act, and the Worker Adjustment and Retraining Notification Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, California Family Rights Act, Pregnancy Disability Leave (California Fair Employment and Housing Act (FEHA)[)], the Fair Labor Standards Act, and state and local statutes and ordinances, if any, addressing the same subject matters, and all other state statutory and common law claims (excluding claims for workers compensation benefits, unemployment insurance, state or federal disability insurance, claims relating to and/or any other dispute or claim that has been expressly excluded from arbitration by statute).

(*Id.*, Ex. 1 to Mot. Compel Arb.). After Defendant Covenant Care hired her, Plaintiff notified her supervisor, Karl, that she became pregnant on or about March 8, 2020. (Compl. ¶¶ 14–15, Ex. A to Pet. Removal, ECF No. 1-2). Following two absences from work for purported sickness on March 18 and 19 of 2020, Karl informed Plaintiff that her employment with Defendant Covenant Care had been terminated for supposed attendance issues. (*Id*. ¶ 21, Ex. A to Pet. Removal).

On November 5, 2021, Plaintiff filed a complaint in the Eighth Judicial District Court of Nevada. (*See generally* Compl., Ex. A to Pet. Removal). Plaintiff asserted the following claims against Defendants: (1) gender discrimination; (2) violation of NRS 613, Nevada Pregnant

Workers' Fairness Act; and (3) negligent hiring, training, and supervision. (*Id.*, Ex. A to Pet. Removal). Plaintiff served Defendants on November 16, 2021. (Aff. Service, Ex. A to Pet. Removal, ECF No. 1-2). Defendants removed the case to federal court on December 15, 2021. (*See generally* Pet. Removal, ECF No. 1). Defendants now move the Court to compel Plaintiff to arbitrate her claims and to stay the case pending arbitration. (*See* Mot. Compel Arb., ECF No. 5).

## II.         LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the enforcement of written arbitration agreements, including agreements arising from most employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111, 119 (2001). Section 2 of the FAA provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Courts place arbitration agreements "upon the same footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (alteration in original). Thus, the Court's "role

under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee v. Intelius, Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013). In answering these questions, the Court must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration. *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996). The party seeking to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement by [a] preponderance of the evidence." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (internal quotation marks and citation omitted). If a district court decides that an arbitration agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006).

### III.    DISCUSSION

Defendants filed the Motion to Compel Arbitration and Motion to Stay, arguing that the Mutual Arbitration Agreement is a valid and enforceable instrument that requires Plaintiff to arbitrate her disputes. (Mot. Compel Arb. 3:11–12). Plaintiff opposes both Motions, asserting that the Mutual Arbitration Agreement is unenforceable. (Pl.'s Resp. Mot. Compel Arb. 4:17–20, ECF No. 11). The Court will first discuss the Motion to Compel Arbitration, then turn to the Motion to Stay.

#### A. Motion to Compel Arbitration

Central to the Motion to Compel is whether a valid agreement to arbitrate was reached between the parties when Plaintiff executed the Mutual Arbitration Agreement. Defendants contend that Plaintiff signed a valid agreement to arbitrate, and that the disputes at issue in the instant action are encompassed within the Agreement. (*See* Mot. Compel Arb. 2:18–3:13). Plaintiff, however, challenges the validity of the Mutual Arbitration Agreement on two

grounds: (1) the Agreement was reached in a procedurally unconscionable manner; and (2) the Agreement itself is substantively unconscionable. (*See* Pl.'s Resp. Mot. Compel Arb. 4:17–20). The Court addresses each issue in turn.

### *1. Validity of Arbitration Agreement*

The Court's first role under the FAA is to determine whether a valid agreement to arbitrate exists. *See Lee*, 737 F.3d at 1261. Defendants claim that Plaintiff signed a valid agreement to arbitrate while engaging in Defendant Covenant Care's hiring process. (*See* Mot. Compel Arb. 5:2–15). In evaluating the validity of this agreement, the Court applies "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc., v. Kaplan*, 514 U.S. 938, 944 (1995). In Nevada, an agreement constitutes an enforceable contract where there is "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).[2] Defendants bear the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. *Bridge Fund Capital Corp.*, 622 F.3d at 1005.

Here, Defendant Covenant Care has submitted a complete copy of the Mutual Arbitration Agreement, and a Declaration by Covenant Care California, LLC's Human Resources Manager, Terri Robinson, in support of the Agreement's validity. (*See* Mutual Arb. Agreement, Ex. 1 to Mot. Compel Arb.); (Robinson Decl. ¶ 3, Ex. 1 to Mot. Compel Arb.). Neither party disputes that Plaintiff signed the agreement while engaging in Defendant Covenant Care's new-hire onboarding process. Thus, the record supports a finding that the Mutual Arbitration Agreement was an offer, accepted by Plaintiff, made in consideration of employment. *See Kindred v. Second Judicial Dist. Court ex rel. County of Washoe,* 996 P.2d 903, 907 (Nev. 2000) (upholding an employment arbitration agreement as an enforceable

---

[2] The Court applies Nevada law to determine whether the Mutual Arbitration Agreement is unconscionable because this action arises from an employment contract consummated in Nevada and Plaintiff alleges violations of Nevada law.

contract in Nevada). Despite this, however, Plaintiff maintains the Mutual Arbitration Agreement is invalid because it is unconscionable, invalid, and thus, unenforceable. (*See* Pl.'s Resp. Mot. Compel Arb. 4:17–20).

### a. Unconscionability

Plaintiff argues the Agreement is unconscionable because it was one of many documents Defendant required her to sign to begin employment and she had no equal footing to negotiate its terms. (Id. 5:12–19). As stated above, when analyzing an agreement under the FAA, federal courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago,* 514 U.S. at 944. "State law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 482 n.9. Accordingly, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996).

In evaluating Plaintiff's unconscionability argument, applicable state law governs. Nevada possesses a strong public policy in favor of arbitration, and arbitration clauses are generally enforceable. *Gonski v. Second Judicial Dist. Court of State ex rel. Washoe*, 245 P.3d 1164, 1168 (Nev. 2010), *overruled on other grounds by U.S. Home Corp. v. M. Ballesteros Tr.*, 415 P.3d 32, 42 (Nev. 2018). "Nevertheless, courts may invalidate unconscionable arbitration provisions." *D.R. Horton*, *Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004)*, overruled on other grounds by U.S. Home Corp.,* 415 P.3d at 42; *see also Burch v. Second Judicial Dist. Court of State ex rel. Washoe*, 49 P.3d 647, 650 (Nev. 2002). "Nevada law requires both procedural and substantive unconscionability to invalidate a contract as unconscionable." *U.S. Home Corp.*, 415 P.3d at 40 (citing *Burch,* 49 P.3d at 650). Thus, the Court first addresses the issue of procedural unconscionability and then looks to substantive unconscionability.

### i. Procedural Unconscionability

Plaintiff argues that the Arbitration Agreement is procedurally unconscionable because Defendant Covenant Care presented it to her on a take-it-or-leave-it basis as part of her on-boarding paperwork. (Pl.'s Resp. Mot. Compel Arb. 5:12–19). Plaintiff asserts that the agreement is invalid on its face, because it "was one of many pages of documents" that afforded her no opportunity to "engage in any meaningful negotiation of the arbitration provision as she was signing and reading a variety of documents simply to obtain employment with the Defendant." (*Id.* 5:13–6:2). In support of her argument, Plaintiff relies heavily on *Ingle v. Circuit City Stores, Inc.* to assert that "it is procedurally unconscionable to require employees, as a condition of employment, to waive their right to seek redress of grievances in a judicial forum." 328 F.3d 1165, 1171–72 (9th Cir. 2003) (citing *Armendariz v. Found. Health Psychcare Servs. Inc.*, 6 P.3d 669, 690 (Cal. 2000)).[3]

"An arbitration clause is procedurally unconscionable when a party has no meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *Gonski*, 245 P.3d at 1169. "Procedural unconscionability often involves the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences." *D.R. Horton,* P.3d at 1162. However, arbitration agreements need not be any more conspicuous than other contract

---

[3] The Court notes that *Ingle* is both legally and factually distinguishable from the instant case. First, *Ingle* was decided under California law, which is not applicable here. Second, *Ingle* concerned an arbitration clause that contained an arbitrary one-year limitation period, a unilateral modification clause in favor of the employer, and was "a prerequisite to employment." *Ingle*, 328 F.3d at 1175, 1179. In contrast, the instant Mutual Arbitration Agreement contains no such limitation on when a claim must be brought (other than the applicable statute of limitations) and requires written agreement from both parties to modify its terms. (*See* Mutual Arb. Agreement, Ex. 1 to Mot. Compel Arb.). Additionally, nothing in the terms of the Agreement or in the record suggests that Plaintiff's employment with Defendant Covenant Care was conditional upon her execution of the Mutual Arbitration Agreement. Because the instant case is distinguishable on these facts, the Court finds that an analysis under *Ingle* is inapplicable here.

provisions to be enforceable. *See U.S. Home Corp.*, 415 P.3d at 41 (explaining that "[r]equiring an arbitration clause to be more conspicuous than other contract provisions is exactly the type of law the Supreme Court has held the FAA preempts. . . .").

Here, the Mutual Arbitration Agreement is not procedurally unconscionable. Rather than using fine print or hiding provisions within a lengthy document, the terms of the Agreement that Plaintiff signed are contained within a single-page document, titled in bolded, underlined capital letters. (*See* Mutual Arb. Agreement, Ex. 1 to Mot. Compel Arb.) ("MUTUAL ARBITRATION AGREEMENT"). Additionally, the document features a bolded acknowledgment directly above Plaintiff's signature, notifying the signee that they are expressly waiving certain rights. (*Id.*, Ex. 1 to Mot. Compel Arb.) ("We understand and agree that, by signing this Agreement, we are expressly waiving any and all rights to a trial before a judge and/or a jury . . . ."). As a result, the terms of the Arbitration Agreement fully apprised Plaintiff of the "contractual language's consequences." *See D.R. Horton,* P.3d at 1162.

Further, Plaintiff's argument concerning the disparity in bargaining power between herself and Defendant Covenant Care is unavailing. Nothing presented in the record indicates that Plaintiff misunderstood the terms of the Arbitration Agreement, or that a failure to sign the Agreement would have barred her employment with Defendant Covenant Care. By signing the Mutual Arbitration Agreement, Plaintiff indicated that she had read, understood, and agreed to the terms of the contract. The terms of the Agreement were presented to Plaintiff in a clear manner, and she had a meaningful opportunity to agree or disagree to the terms. Accordingly, the Court finds that the Mutual Arbitration Agreement is not procedurally unconscionable.[4]

---

[4] Insofar as Plaintiff argues that the Mutual Arbitration Agreement is unconscionable because it is an adhesion contract, this too is unconvincing. Plaintiffs asserts that "it is implausible to presume that Plaintiff had any real opportunity to modify the terms of the contract." (Pl.'s Resp. Mot. Compel Arb. 6:15–18). However, "[t]he Nevada Supreme Court has held that adhesion-contract analysis is inapplicable in the employment context." *Hillgen-Ruiz v. TLC Casino Enterprises, Inc.,* No. 2:14-cv-0437-APG-VCF, 2014 WL 5341676 at *6 (D. Nev.

### ii. Substantive Unconscionability

Next, Plaintiff argues the Mutual Arbitration Agreement is substantively unconscionable because she had no opportunity to negotiate its terms. (Pl.'s Resp. Mot. Compel Arb. 7:15–19). However, "Nevada law requires both procedural and substantive unconscionability to invalidate a contract as unconscionable." *U.S. Home Corp.*, 415 P.3d at 40–41; *See Burch*, 49 P.3d at 650. ("Generally both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a contract or clause as unconscionable."). Because the Court finds that the Mutual Arbitration Agreement is not procedurally unconscionable, it need not consider whether the Agreement is substantively unconscionable.[5] Accordingly, the Court finds the Mutual Arbitration Agreement is valid.

### 2. *The Disputes at Issue are Encompassed by the Agreement*

If satisfied that a valid arbitration agreement exists, the FAA then limits courts to determine whether the agreement encompasses the disputes at issue. *See Lee*, 737 F.3d at 1261. "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983).

---

Oct. 20, 2014). "An adhesion contract is a standardized contract form offered to consumers of goods and services essentially on a take it or leave it basis, without affording the consumer a realistic opportunity to bargain. We have never applied the adhesion contract doctrine to employment cases." *Kindred v. Second Judicial Dist. Court ex rel. County of Washoe,* 996 P.2d 903, 907 (Nev. 2000).

[5] Even if the Court considered substantive unconscionability, Plaintiff does not demonstrate this exists. In Nevada, substantive unconscionability "is based on the one-sidedness of the arbitration terms" and whether those terms are "oppressive." *D.R. Horton*, 96 P.3d at 1162–63. Here, Plaintiff does not point to any specific provision of the Mutual Arbitration Agreement as being either "one-sided" or "oppressive." Even if she had, the language of the terms of the Agreement do not bear this out. The Agreement preserves each party's right to conduct discovery and bring motions before a mutually agreed upon neutral arbitrator, pursuant to the Federal Rules of Civil Procedure, and to seek the same remedy that they would be entitled to under applicable law. (*See* Mutual Arb. Agreement, Ex. 1 to Mot. Compel Arb.). The Agreement imposes no restrictions on eligible claims, other than the applicable statute of limitations period. (*Id.*, Ex. 1 to Mot. Compel Arb.).

Here, Plaintiff is silent on whether the Mutual Arbitration Agreement encompasses the disputes at issue. (*See generally* Pl.'s Resp. Mot. Compel Arb.).  Nevertheless, the Court finds that the plain language of the Agreement does encompass the disputes at issue.  The Mutual Arbitration Agreement expressly states that it covers "disputes about hiring, compensation, termination, discrimination, . . . including but not limited to claims arising under . . . state and local statutes and ordinances, if any, addressing the same subject matters, and all other state statutory and common law claims . . . ." (*See* Mutual Arb. Agreement, Ex. 1 to Mot. Compel Arb.).  In the instant case, Plaintiff's claims arise from the *termination* of her employment with Defendant Covenant Care. (*See generally* Compl., Ex. A to Pet. Removal).  Further, Plaintiff's causes of action (*i.e.*, gender discrimination, violation of NRS 613, and negligent hiring, training, and supervision) are rooted in state statutory and common law claims. *See* NRS § 613.330; *id.* § 613.4353; *Hall v. SSF, Inc.*, 930 P.2d 94, 98–99 (Nev. 1996).  As a result, the Court finds that the Mutual Arbitration Agreement encompasses the disputes at issue.

### B. Motion to Stay Pending Arbitration

Defendants argue the Court should impose a stay pending arbitration proceedings. (Mot. Stay 6:4–11, ECF No. 6).  Plaintiff does not respond.  Upon finding that a claim is subject to arbitration, and pursuant to 9 U.S.C. § 3, the Court has authority to grant a stay pending arbitration. *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *see also Nagrampa*, 469 F.3d at 1276–77.  As discussed above, the Court finds that a valid agreement to arbitrate exists and that the disputes at issue are encompassed within the Mutual Arbitration Agreement.  Accordingly, the Court will grant a stay pending arbitration proceedings.

### V. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Arbitration, (ECF No. 5), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Pending Arbitration, (ECF No. 6), is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties must file joint status reports every ninety (90) days while the case is stayed, informing the Court of the status of the arbitration proceedings, beginning on January 26, 2023.

**DATED** this  28  day of October, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court